UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

**SHARON GULEMBO**,                                         Case No. 11-01352

                                                           District Judge Janet T. Neff

      Plaintiff,

v.

**BANK OF AMERICA, NA**,                         Removed from:
                                                           Kent County Circuit Court
      Defendant.                      Case No. 11-10803-CH
                                                           Hon. George S. Buth

_____

### PLAINTIFF'S BRIEF IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT AGREEMENT - ORAL ARGUMENT REQUESTED

### <u>FACTS</u>

Bank of America uses a system of representation where it hires a national firm, Bryan Cave, LLP, to coordinate its representation in various lawsuits. Either Bryan Cave or Bank of America then hires local counsel to appear in the case on behalf of Bank of America; in this case, Maddin, Hauser, Roth & Heller, P.C. An associate at Bryan Cave, Leighton O'Connell-Miller, has been Plaintiff's Counsel's primary contact on the defense team in this case.

In November 2014, O'Connell-Miller contacted Plaintiff's Counsel and asked that Ms. Gulembo provide a new settlement offer to resolve the case. On November 11, 2014, Plaintiff's Counsel submitted an offer that involved a loan modification, and reserved the reasonable attorney's fees to be paid to Legal Aid of Western Michigan until after settlement.

On November 19, 2014, O'Connell-Miller sent an email to Plaintiff's Counsel stating that Bank of America offered to settle the case with the following loan modification:

> Total loan principal balance reduced to: $52,000.00
> Interest rate of: 2.000%
> monthly P&I [principal and interest] payment of $490.83
> [Exhibit A]

In the email, O'Connell-Miller also stated that Ms. Gulembo would make payments under a trial period plan, beginning December 31, 2014. O'Connell-Miller further stated that Bank of America would have to understand the attorney's fees prior to settlement.

Plaintiff accepted the offer, and Plaintiff's Counsel sent an email on November 26, 2014, and stated that Legal Aid of Western Michigan was willing to cap its attorney's fees at $17,500.00. (Exhibit B).

In a December 3, 2014, email, O'Connell-Miller states:

> Given the legal fee issue, Bank of America is willing to settle the matter for a dismissal with prejudice for the loan modification and will contribute $15,000 in legal fees as part of the settlement proceeds. I will need to get a W-9[.] This offer would not be on the table if the Bank did not respect your organization's charter. Please let me know if that is acceptable to your client.
> [Exhibit C]

On December 3, 2014, Plaintiff's Counsel emailed in response, stating "I spoke with my client and my supervisor, and all are in agreement that we will accept this counter-offer." (Exhibit D). In a follow-up email that same date, O'Connell-Miller suggested that the parties file a notice of settlement, and stated that he would work on drafting a settlement agreement. (Exhibit E).

Along with the emails, O'Connell-Miller also sent Plaintiff's Counsel a Trial Period Plan, requiring Ms. Gulembo to make three payments of $490.83 by February 1, 2015. (Exhibit F).

A Notice of Settlement was filed by the Parties on December 8, 2014, (Dkt. 81) and the Court issued an Order Regarding Dismissal on December 9th, (Dkt. 82) requiring the parties to submit dismissal paperwork by March 2, 2015.

Ms. Gulembo made the three required TPP payments. (Exhibit G).

By January 23, 2015, 50 days had passed since O'Connell-Miller stated that he would draft a settlement agreement, and none had been provided. Plaintiff's counsel therefore emailed a draft document to O'Connell-Miller, which included all of the terms of the settlement agreed to by the parties. (Exhibit H). On January 27, 2015, O'Connell-Miller responded, stating that he would have an agreement based on Bank of America's form documents sent to Plaintiff's Counsel by Friday. (Exhibit I).

Almost a month later, on February 17, 2015, Plaintiff's Counsel sent O'Connell-Miller a reminder email, asking for a draft settlement agreement. (Exhibit J). Steven Smith, of Bryan Cave, responded to the email and asked for an extension on the deadline that had been established by the Court. Plaintiff's Counsel agreed to the extension, but stated in the email:

> We should probably ask for long enough that we don't have to keep going back to the trough. How long do you anticipate it will take your client to review and sign, keeping in mind that there will probably be a bit of back-and-forth on the language. Do you think 60 days is enough?
> [Exhibit K]

On February 26th, the Parties submitted a stipulation, extending the deadline to file dismissal paperwork until March 30, 2015. (Dkt 83). In late

February, Steven Smith, an attorney with Bryan Cave, sent Plaintiff's Counsel a permanent modification agreement, which Plaintiff has executed. (Exhibit L). Plaintiff's Counsel has been waiting until the settlement was finalized before returning the signed agreement, and has the signed agreement in his possession.

On March 19, 2015, over 100 days after settling the case, O'Connell-Miller sent a draft document, incorporating the terms of the settlement, to Plaintiff's Counsel for the first time. (Exhibit M). However, the document contained several provisions that were not bargained for in the negotiations to settle the case, including a confidentiality agreement, a non-disparagement clause, and a waiver of any right to a jury trial.

Plaintiff's counsel reviewed the document, and sent objections to O'Connell-Miller for review on April 2, 2015. (Exhibit N). No response has been received from Defense Counsel.

The current deadline to file dismissal paperwork is April 14, 2015. (Dkt. 85). The Parties filed a stipulation to extend that deadline, but the Court denied the request. (Dkt. 86 & 87).

## LAW AND ARGUMENT

### 1. JURISDICTION AND ENFORCEMENT OF SETTLEMENT AGREEMENTS

Before entry of a judgment, district courts "retain the inherent power to enforce agreements entered into settlement before." *Aro Corp v. Allied Wita Co.,* 531 F.2d 1368, 1371 (6th Cir. 1976). Michigan contract law governs the validity of a settlement

agreement. *Michigan Regional Council of Carpenters v. New Century Bancorp, Inc.,* 99 F. App'x 15 (6th Circuit, 2004). "An agreement to settle a lawsuit is a contract that is subject to the legal principles generally applied to contracts." *Scholnick's Importers-Clothiers, Inc. v. Lent*, 130 Mich.App. 104, 109, 343 N.W.2d 249 (1983); *Mastaw v. Naiukow*, 105 Mich.App. 25, 28-29, 306 N.W.2d 378 (1981). Under usual contract principles, parties bound by the settlement agreement absent a showing of mistake, fraud, or unconscionable advantage. *Plamondon v. Plamondon*, 230 Mich App 54, 56; 583 NW2d 245, 246 (1998) quoting *Prichard v. Sharp*, 51 Mich. 432, 435, 16 N.W. 798 (1883); *Marvin v. Marvin*, 203 Mich.App. 154, 157, 511 N.W.2d 708 (1993); *Meyer v. Rosenbaum*, 71 Mich.App. 388, 393-394, 248 N.W.2d 558 (1976).

In this case, an email from O'Connell-Miller, an agent of Bank of America, outlining the terms of a loan modification constituted an offer. That offer was accepted by Defendant, reserving the issue of attorney's fees. In a couple of emails, the parties negotiated over the specific amount of attorney's fees to be paid, but in an email dated December 3, 2014, O'Connell-Miller referenced the loan modification and stated that Bank of America was willing to resolve this lawsuit for a dismissal with prejudice, the loan modification, and payment of $15,000.00 in legal fees. (See Ex. C).

"An offer is defined as the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Kloian v. Domino's Pizza L.L.C.*, 273 Mich. App. 449, 453, 733 N.W.2d 766, 770 (2006)(internal quotations removed). The December 3 email represents a firm offer that is definite in its terms, and can be accepted by the offered

party. The assent to the bargain by Plaintiff had been invited, and very clearly would have concluded the negotiations.

On that same date, Plaintiff's Counsel responded by email, stating that "we accept this counter-offer." (See Ex. D). A contract forms if the acceptance is unambiguous and conforms to the offer. *Kloian, supra*, at 452. The responsive email was an unambiguous acceptance of the offer, and a contract formed at that point.

Plaintiff has performed under the contract by making payments under the TPP, and then by making payments under the modified mortgage. Defendant has not performed under the contract; it has failed to offer a written settlement agreement that conforms with the terms of the settlement.

## CONCLUSION

For the reasons set forth above, Plaintiff requests this Court to enforce the settlement agreement that the Parties entered into on December 3, 2014.

Dated:  April 12, 2015                          /s/ *John P. Smith*
                                        LEGAL AID OF WESTERN MICHIGAN
                                        By:  John P. Smith (P71368)
                                        Attorneys for Plaintiff